IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VALMONT INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-042-LPS-CJB |
| | ) | |
| LINDSAY CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

1. In this patent infringement action filed by Plaintiff Valmont Industries, Inc. ("Plaintiff" or "Valmont"), Defendant Lindsay Corporation ("Defendant" or "Lindsay") has filed a motion to dismiss the operative First Amended Complaint ("FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 33) More specifically, Defendant moves to dismiss Plaintiff's allegations of direct infringement, induced infringement, contributory infringement and willful infringement of the one patent-in-suit, United States Patent No. 7,003,357[1] ("the '357 patent" or the "patent-in-suit"). (D.I. 34 at 1-2)[2] The instant Motion has been referred to the Court for resolution by Chief Judge Leonard P. Stark, (D.I. 5), and was fully

---

[1] The '357 patent (issued Feb. 21, 2006), which originally contained 18 claims, is attached as an exhibit to the FAC; so too is an Ex Parte Reexamination Certificate for that patent (issued Feb. 9, 2017). (D.I. 31, exs. A-B) Claims 1-15, 17 and 18 of the patent were not reexamined, (*id.*, ex. B, col. 1:18), but of those claims, claims 1-10, 12-15 and 17-18 have been found to be unpatentable by the United States Patent & Trademark Office's Patent Trial and Appeal Board in an *inter partes* review proceeding, (D.I. 30 at 2). Claim 16 was cancelled in connection with the reexamination proceeding, and new claims 19-90 were issued in that proceeding. (D.I. 31, ex. B, col. 1:15-17; D.I. 30 at 2)

[2] Plaintiff originally asserted a claim of joint infringement, (*see, e.g.*, D.I. 31 at ¶ 24), but it has informed the Court that it is no longer asserting such a claim, (D.I. 36 at 4 n.1), and so the Court will not address it herein.

briefed as of August 14, 2017, (D.I. 37).³

2. The standard of review here is the familiar two-part analysis applicable to motions made pursuant to Rule 12(b)(6). *See Raindance Techs., Inc. v. 10x Genomics, Inc.*, Civil Action No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (applying the *Twombly/Iqbal* standard to claims of direct patent infringement filed subsequent to the December 2015 abrogation of Federal Rule of Civil Procedure 84 and patent pleading Form 18); *see also North Star Innovations, Inc. v. Micron Tech., Inc.*, Civil Action No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*,

---

³ On September 19, 2017, Plaintiff filed a Notice of Supplemental Authority, advising the Court of the recent decision of the United States Court of Appeals for the Federal Circuit in *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017). (D.I. 42) *Lifetime* will be discussed more fully below.

2

578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).[4]

    3.    With regard to the claims of direct infringement, Plaintiff alleges in the FAC that Defendant's FieldNet products (the "accused products") infringe claims 11 and 25-90 of the patent-in-suit, but Plaintiff makes detailed exemplary allegations about infringement of only one such claim—claim 25 (a system claim). (D.I. 31 at ¶¶ 14-24)[5] Thus, *inter alia*, Plaintiff needs to have pleaded facts that plausibly indicate that the accused products practice each of the limitations found in claim 25. *See e.Digital Corp. v. iBaby Labs, Inc.*, Case No. 15-cv-05790-JST, 2016 WL 4427209, at *3-4 (N.D. Cal. Aug. 22, 2016); *Raindance Techs., Inc.*, 2016 WL 927143, at *2-3; *see also North Star*, 2017 WL 5501489, at *1. After all, if it is not plausible, after reading a complaint, that the accused infringer's product reads on a limitation in the one asserted claim from a patent-in-suit on which the complaint focuses, then it is not plausible that the accused infringer actually infringes the patent claim (or the patent). *See e.Digital Corp.*, 2016 WL 4427209, at *3; *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016); *see also North Star*, 2017 WL 5501489, at *1.

    4.    Claim 25 recites:

---

[4] In resolving a motion to dismiss, a court may consider not only the allegations in the complaint, but also, *inter alia*, exhibits attached to the complaint, documents integral to or explicitly relied upon in the complaint, and matters of public record. *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 & n.2 (3d Cir. 1994); *Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*, Civ. No. 14-1482-SLR, Civ. No. 14-1483-SLR, 2015 WL 4477700, at *2 (D. Del. July 22, 2015).

[5] Because the FAC includes specific infringement allegations only as to how claim 25 is infringed by the FieldNet products, it is clear that if those allegations do not pass muster pursuant to *Twombly* and *Iqbal*, none of the other allegations regarding other allegedly infringed claims would either. In light of this, the Court will focus on the allegations regarding the exemplary claim herein.

> **25.** A remote user interface for reading a status of and controlling irrigation equipment including a pivot and at least two end-guns affixed to the pivot, comprising:
>
> a hand-held display;
>
> a processor;
>
> wireless telemetry means for transmitting signals and data between the remote user interface and the irrigation equipment; and
>
> software operable on said processor for:
>
> (a) displaying data received from the irrigation equipment as a plurality of graphic user interfaces (GUIs) that are configured to present said data as status information on said display, wherein said plurality of GUIs are shaped to identify particular types of irrigation equipment by comprising a pivot GUI that represents the pivot, at least two end-gun GUIs that represents the at least two end-guns affixed to the pivot, and a spray pattern GUI that represents a setting of the at least two end-guns along a pivot path; wherein the pivot GUI has a shape representing the pivot path of the pivot, the shape partitioned into a plurality of wedges; wherein the spray pattern GUI has a spray pattern representing the setting of the at least two end-guns along the pivot path;
>
> (b) receiving a user's commands to control the irrigation equipment, through said user's manipulation of said GUIs, wherein receiving the user's commands comprises:
> receiving the user's selection of a wedge; and
> receiving the user's selection of a change of a status of one of the least two end-guns for the selected wedge; and
>
> (c) transmitting signals to the irrigation equipment to control the irrigation equipment in accordance with said user's commands; and
>
> (d) displaying a changed spray pattern of the selected wedge according to the change of the status of one of the least two end-guns.

(D.I. 31, ex. B, cols. 1:63-2:37 (emphasis omitted)) Defendant asserts that Plaintiff does not adequately allege how Defendant has committed direct infringement, because the FAC does not

plausibly articulate how the accused products "embody a hand-held display, a processor or wireless telemetry means, which are limitations required by all the asserted claims." (D.I. 34 at 6) Defendant's argument here is that the "accused FieldNet® product is software that *uses* the wireless capabilities, hand-held displays and processors *of the end user's device*." (*Id.* at 5 (certain emphasis in original, certain emphasis added)) In other words, according to Defendant, there is no single, unitary product that *Defendant* makes, sells, offers for sale or imports that contains all of the elements of the claimed system. (*Id.* at 5-6) And as for infringing *uses*, Defendant notes that if the FieldNet software products do not contain each and every element of the claimed system (and, instead, if other hardware products are said to satisfy certain of those claim elements), then the law requires allegations that Defendant "'control[s] the system as a whole and obtain[s] benefit from it[.]'" (*Id.* at 6 (quoting *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)). Defendant does not believe that Plaintiff has plausibly alleged how, simply by providing the accused software to its customers, it can be said to "control" these other parts of the system. (*Id.*)

5. Here, however, the Court agrees with Plaintiff that it has set out a plausible claim of direct infringement. The Court acknowledges that from the FAC's exemplary allegations, it does seem like the hand-held display, processor and wireless telemetry system are said to be provided by "an iPhone or Android smartphone or iPad tablet device"—that is, devices that download "FieldNet Mobile apps." (D.I. 31 at ¶¶ 16-17)[6] And it also seems like, in the main, it is Defendant's customers (not Defendant itself) who are likely to be the persons utilizing the

---

[6] Plaintiff is correct that Defendant has "not den[ied] that [it is plausible that] these devices include the claimed hardware elements [i.e., a hand-held display, a processor and wireless telemetry means]." (D.I. 36 at 7)

devices at issue to commit alleged infringement. But based on the FAC's allegations, it does not strike the Court as implausible that there are some infringing uses in which Lindsay personnel utilize such devices to run FieldNet software (such as for testing purposes, training purposes, promotional purposes or otherwise). Indeed, the Lindsay promotional materials depicted in paragraph 15 of the FAC appear to show someone associated with Lindsay utilizing the FieldNet software on a tablet and a smartphone. (D.I. 36 at 7 (Plaintiff pointing to Linsday promotional materials cited in the FAC and suggesting that these are examples of "Lindsay us[ing] the FieldNet mobile app with tablets and smartphones.") (citing D.I. 31 at ¶¶ 15-17)) That is enough to plausibly allege that Defendant has directly infringed claim 25.

6. With regard to Plaintiff's allegations of induced infringement, Defendant makes a few different arguments. The Court will take those up in turn below.

7. First, Defendant notes that in pleading induced infringement, there must be a plausible allegation that a third party actually directly infringes the patent-in-suit. (D.I. 34 at 9); *see also Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("There can be no inducement or contributory infringement without an underlying act of direct infringement."). Defendant asserts that Plaintiff never comes out and directly states in the FAC that Plaintiff's customers *actually use* the accused products in an infringing manner. (D.I. 37 at 3-4 (noting that in the FAC, it is alleged that FieldNet mobile apps "can be used" on a customer's device, but that the FAC never alleges that the product "is used" or "has been used") (internal quotation marks omitted) (citing D.I. 31 at ¶ 16)) But the FAC does more than just state that FieldNet mobile apps "*can be used* on Apple and Android tablets and smartphones." (D.I. 31 at ¶ 16 (emphasis added)) It also makes clear that it is asserting that Plaintiff's "customers" are the

6

ones who do in fact "purchase Lindsay's FieldNet products" and use them in an infringing way via the use of such handheld devices. (*Id.* at ¶ 27) As it is plausible that: (1) Plaintiff has such customers and (2) that those customers do in fact do this. So this is not a basis to dismiss the inducement claims.

8.  Second, Defendant notes that inducement allegations require that the indirect infringer knew that the third parties' (Plaintiff's customers') acts constituted infringement. (D.I. 34 at 9-10); *see also In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (noting that a plaintiff must plead facts plausibly showing that the indirect infringer "specifically intended their customers to infringe the [patent-in-suit] and knew that the customer's acts constituted infringement"). To the extent that Plaintiff is attempting to plead that Defendant had such knowledge as of the date of the filing of the original Complaint (January 14, 2015),[7] Defendant asserts that such an allegation must fail. The Court agrees. The first Complaint provided nothing more than bare bones allegations of direct and indirect infringement; it was as fact-free and conclusory as it gets as to such allegations. (*See generally* D.I. 1) That is, it contained no factual allegations that described how it could be said that Defendant's products actually infringe the patent. (*Id.*) Instead, the original Complaint did little more than: (1) state that Plaintiff owns the patent-in-suit; (2) accuse Defendant of infringing that patent; (3) state that Defendant did so through the use of its "FieldNet products[;]" and (4) parrot back the wording of the legal elements of direct, induced and contributory infringement. (*Id.* at ¶¶ 7-22) The FAC does not otherwise plead facts explaining how, in light

---

[7] Plaintiff is not alleging that Defendant had such knowledge prior to the filing of the original Complaint. (D.I. 31 at ¶ 25)

7

of this, Defendant's receipt of the original Complaint plausibly provided Defendant with knowledge that what its customers do with the accused products amounts to infringement of at least one claim of the patent. *See Princeton Digital Image Corp. v. Ubisoft Entm't SA*, Civil Action No. 13-335-LPS-CJB, 2016 WL 6594076, at *10 & n.19 (D. Del. Nov. 4, 2016), *adopted by* 2017 WL 6337188 (D. Del. Dec. 12, 2017); *Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*, Civil Action No. 14-6650, 2015 WL 3755223, at *6 (E.D. Pa. June 15, 2015); *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, Civil Action No. 13-2052-LPS, 2014 WL 4675316, at *5 (D. Del. Sept. 19, 2014). This is particularly problematic here because as of the date of the original Complaint, all but one of the currently-asserted claims of the patent (all but claim 11) did not even exist (and one cannot knowingly infringe a patent claim that does not exist). (*See supra* n.1; *see also* D.I. 34 at 10; D.I. 36 at 9)[8] As for claim 11, the one currently-asserted claim that did

---

[8] In the Court's view, a plaintiff alleging that it is plausible that a defendant had knowledge of its infringement as of a particular date must do more than simply allege facts rendering it plausible that as of that date: (1) a defendant knew of the patent claims and (2) happened to infringe at least one of them. There also has to be *some facts* alleged that show why it is plausible that, as of that date, the defendant *knew that it infringed.* This may not need to amount to much. For example, here, even if the original Complaint did not itself explain how it is that Defendant's products infringed a claim of the patent, Plaintiff might nevertheless be able to plead facts showing how Defendant plausibly knew it was infringing a claim of the patent as of that date, such as by pleading additional facts about (1) Defendant's knowledge of the patent, or (2) its knowledge of the industry in general, or (3) its knowledge of the history of litigation/conflict between the parties.

To the extent that Plaintiff asserts that the decision in *Lifetime* is in conflict with this conclusion, (D.I. 42), the Court disagrees. In *Lifetime*, *inter alia*, the Federal Circuit overturned a district court's decision that the plaintiff had not plausibly alleged, for purposes of pleading indirect infringement, that the defendant knew that it was infringing the patent-in-suit as of June 2013 (the date when the defendant first offered the accused product for sale). 869 F.3d at 1380-81. But in *Lifetime*, the plaintiff had not simply alleged facts indicating *only* that the defendant (1) knew of the patent as of June 2013; and (2) happened to infringe thereafter. The plaintiff also pleaded additional facts rendering it plausible that the defendant *would have or should have understood why*, as of June 2013, its accused product (a two-part seal for a recreational vehicle)

8

then exist, it may be possible for Plaintiff to later plead facts explaining why, as of the date of the original Complaint, Defendant knew it infringed that claim. But the FAC does not now make a clear attempt to do so.

9. Third, Defendant argues that the FAC insufficiently alleges that Defendant specifically intends for its customers to use the accused products in an infringing manner. (D.I. 34 at 10-11) But Defendant does not argue that the FAC contains insufficient allegations as to *how* its customer's actual use of the FieldNet app (along with the customer's device) can constitute infringement. (D.I. 31 at ¶¶ 15-23) The FAC (unlike the original Complaint) does in fact contain such detailed allegations. (*Id.*) And from there, the FAC also includes a specific allegation that Defendant's website "advertises and encourages the use of its products to remotely control irrigation equipment." (*Id.* at ¶ 27 (citing "http://www.myfieldnet.com/remote-management")) In looking at that website, it does indeed appear to contain content encouraging people to use smartphones loaded with the FieldNet software to manage and control irrigation

---

*could actually be said to have infringed that patent.* Those facts included that: (1) defendant then employed two men, Daryl Torrey and Andrew Busch, who had formerly worked for the plaintiff; (2) Torrey and Busch, while they worked for the plaintiff, had actually participated in the design and manufacturing process regarding plaintiff's seals, which were covered by the patent-in-suit; (3) Torrey and Busch knew of the patent-in-suit back when they worked for the plaintiff; (4) Torrey and Busch left plaintiff's employ and started to work for the defendant in May 2013—just one month before the defendant was alleged to have begun offering the accused product for sale; and (5) the defendant had never made or sold these particular accused products prior to Torrey and Busch joining their company. *Id.* at 1375, 1379-81. So in *Lifetime*, the allegations were not just that the defendant knew of the patent as of the date that Torrey and Busch joined their company, and that the defendant happened to infringe thereafter, but that defendant had knowledge (through Torrey and Busch) of *why* the accused product could then have been understood to read on at least one of the patent's claims. That is, one could infer from the pleaded facts that defendant had such knowledge because Torrey and Busch clearly understood what types of seals read on the patent's claims, and thereafter allegedly helped defendant generate a copycat, infringing product.

equipment—including pivots and end guns. (*Id.* at ¶ 15 (referencing and showing screenshots from "http://www.myfieldnet.com/remote-management"); *see also* Lindsay Corporation, http://www.myfieldnet.com/remote-management (last visited Jan. 22, 2018)). So it seems plausible to the Court, then, that the website's content is evidence that Defendant specifically intends its customers to use the products in an infringing manner.

10. As for contributory infringement, the only argument Defendant makes that is not already addressed above (in the induced infringement section) is that the FAC fails to plausibly plead that Defendant knows that the accused products have no substantial non-infringing use. *See* 35 U.S.C. § 271(c). Defendant states that its website (referred to in the prior paragraph) shows that the accused FieldNet software is "capable of performing a multitude of functions[,]" some of which do not have to do with infringing claim 25. (D.I. 37 at 6 (citing D.I. 31 at ¶¶ 15, 22, 27); *see also id.* at 7) This appears right to the Court (at least, from what the Court can glean from the site and the remainder of the FAC), since the software at issue seems to have functions other than those focused on reading the status of and controlling irrigation equipment. (D.I. 31 at ¶ 15 (images showing that the software can be used to, *inter alia*, monitor weather information)) While Plaintiff does allege baldly in the FAC that the FieldNet products "cannot be used but to infringe" the patent-in-suit, (*id.* at ¶ 29), in light of the above, it does not plead enough facts for the Court to understand how it is plausible that this is so. And so on this ground, the Court agrees that the contributory infringement claim is insufficiently pleaded.

11. Lastly, Defendant addresses the willful infringement allegation. (D.I. 34 at 13-14) Defendant notes that the entire basis for Plaintiff's claim of willful infringement is that Defendant has engaged in "egregious infringement behavior" in light of Defendant's receipt of

and review of the "Original Complaint"; it is alleged that Defendant, due to that Complaint, "has known or should have known that its actions constituted and continue to constitute infringement" of the patent-in-suit. (D.I. 31 at ¶ 31 (*cited in* D.I. 34 at 13 & D.I. 37 at 7)) But as noted above, the original Complaint is completely bereft of factual allegations as to how Defendant's products infringe (and it was filed at a time when all of the currently asserted claims, save one, did not yet even exist). Plaintiff has not pleaded facts to demonstrate why the original Complaint's contents (or some other circumstances) show how Defendant "has[, from the date of that Complaint,] known or should have known" that its actions "constituted and continue to constitute" infringement, let alone "egregious" infringement. For that reason, the Court also agrees that the willful infringement allegation is not sufficiently pleaded.

12. In its briefing, Plaintiff requests leave to amend should the Court grant this Motion. (D.I. 36 at 14) In light of the fact that leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), because dismissal with prejudice is "rarely" a proper sanction, *see Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1334 (Fed. Cir. 2009) (citing Third Circuit case law), and because this is the first time that a court has found Plaintiff's allegations wanting, the Court recommends that Plaintiff be given leave to file a further amended complaint addressing the deficiencies outlined above.

13. For the foregoing reasons, the Court recommends that the Motion be GRANTED-IN-PART and DENIED-IN-PART.[9] More specifically, the Court recommends that the Motion be GRANTED as to: (1) allegations of induced infringement stemming from a time period earlier than the filing of the FAC; (2) allegations of contributory infringement; and (3) allegations

---

[9] Plaintiff's request for oral argument, (D.I. 39), is DENIED.

of willful infringement. The Court recommends that the Motion be otherwise DENIED. To the extent that the District Court adopts this Report and Recommendation, the Court further recommends that Plaintiff be provided 14 days to file a further amended complaint.

14. This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006). The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: January 22, 2018

*[signature]*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE