IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VALMONT INDUSTRIES, INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 15-42-LPS |
| LINDSAY CORPORATION and LINDSAY SALES & SERVICES, LLC, | : | |
| Defendants. | : | |

Susan E. Morrison, FISH & RICHARDSON P.C., Wilmington, DE

P. Weston Musselman, Jr., Ricardo J. Bonilla, FISH & RICHARDSON P.C., Dallas, TX

    Attorneys for Plaintiff


Rodger D. Smith II, Eleanor G. Tennyson, Jennifer A. Ward, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

    Attorneys for Defendants

## MEMORANDUM OPINION

November 14, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiff Valmont Industries, Inc. ("Plaintiff" or "Valmont") asserts, in the operative Second Amended Complaint ("SAC"), that Defendants Lindsay Corporation and Lindsay Sales & Services, LLC ("Defendants" or "Lindsay") infringe Valmont's U.S. Patent No. 7,003,357 C2 (D.I. 66-1) ("the '357 Patent"), entitled "Method and Means for Reading the Status of and Controlling Irrigation Components." Lindsay filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the patent-in-suit fails to claim patent eligible subject matter under 35 U.S.C. § 101. (D.I. 68)

## I. BACKGROUND

The patent-in-suit is directed to the use and improvement of irrigation control and monitoring systems. (*See* '357 patent at Abstract) The patent teaches the use of a hand-held portable device to remotely display and control irrigation systems. The parties dispute whether the aim and inventiveness of the patent was directed to allowing remote and portable irrigation control (*see* D.I. 100 ("Tr.") at 86) (Defendants: "It's our view that they're just using the computer technology here, a hand-held computer as a tool to implement something that was well known.") or to overcome challenges in displaying irrigation status on a compact screen (*see* Tr. at 97) (Plaintiff arguing that patent is "about particular GUIs that allow a user to quickly and easily read a comprehensive set of information on a single screen").

The '357 patent has been revised multiple times. First, all but claims 11 and 16 were found unpatentable during the *inter partes* review (IPR). (D.I. 30 at 2) Second, claim 16 was found unpatentable and claims 19-90 were added in the first *ex parte* reexamination. (D.I. 31 ¶ 13) Third, claims 19, 20, 21, and 23 were amended as a result of a second *ex parte* reexamination. (D.I. 66-3) Lastly, on May 9, 2018, the Federal Circuit on appeal from the IPR

1

invalidated claim 11, leaving claims 1-18 invalidated with claims 19-90 remaining in effect. *See Valmont Industries, Inc. v. Lindsay Corp.*, 730 F. App'x 918 (Fed. Cir. 2018).

Defendants point to claim 25 as representative of the asserted claims (25-90). (D.I. 69 at 3-4; Tr. at 92-93) Plaintiff contests the representativeness of claim 25, citing claims 79 and 37 as presenting different issues. (Tr. at 114-15) While the SAC focuses on claim 25, Plaintiff is asserting other claims as well, and the Court is not persuaded of its representativeness. Hence, the Court will address the three claims cited by the parties – claims 25, 37, and 79 – but will require additional briefing if either party seeks a ruling on any other claim.

Claim 25 of the '357 patent recites:

> A remote user interface for reading a status of and controlling irrigation equipment including a pivot and at least two end-guns affixed to the pivot, comprising:
>
> > a hand-held display;
> >
> > a processor;
> >
> > wireless telemetry means for transmitting signals and data between the remote user interface and the irrigation equipment; and
> >
> > software operable on said processor for:
>
> > (a) displaying data received from the irrigation equipment as a plurality of graphic user interfaces (GUIs) that are configured to present said data as status information on said display, wherein said plurality of GUIs are shaped to identify particular types of irrigation equipment by comprising a pivot GUI that represents the pivot, at least two end-gun GUIs that represents the at least two end guns affixed to the pivot, and a spray pattern GUI that represents a setting of the at least two end-guns along a pivot path; wherein the pivot GUI has a shape representing the pivot path of the pivot, the shape partitioned into a plurality of wedges; wherein the spray pattern GUI has a spray pattern representing the setting of the at least two end-guns along the pivot path;
>
> > (b) receiving a user's commands to control the irrigation equipment, through said user's manipulation of said GUIs, wherein receiving the user's commands comprises: receiving the user's selection of a wedge; and receiving the user's selection of a change of a status of one of the least two end-guns for the selected wedged; and

>                (c) transmitting signals to the irrigation equipment to control the
> irrigation equipment in accordance with said user's commands; and
>
>                (d) displaying a changed spray pattern of the selected wedge
> according to the change of the status of one of the least two end-guns.

('357 patent at 1:63-2:37)

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting

3

*Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

**B.     Patentable Subject Matter**

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355

(2014). First, courts must determine if the claims at issue are directed to a patent-ineligible concept ("step one"). *See id.* If so, the next step is to look for an "'inventive concept' – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step two"). *Id.* The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*Affinity Labs I*") (stating first step "calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter").

In conducting the step one analysis, courts should not "oversimplif[y]" key inventive concepts or "downplay" an invention's benefits. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337-38 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims.") (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

At step two, courts must "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRo*, 837 F.3d at 1312 (internal brackets and quotation marks omitted). The "standard" step two inquiry includes consideration of whether claim elements

"simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted; emphasis in original).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an ordered combination of these limitations was patent-eligible under step two. *Id.* at 1349.

The Federal Circuit recently elaborated on the step two standard, stating that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368; *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018) ("We have held that 'whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact.'") (*quoting Berkheimer*, 881 F.3d at 1368).

"Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369; *see also Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 965 (Fed. Cir. 2018) ("Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference. There are many obscure references that nonetheless qualify as prior art.").

As part of the step two "inventive concept" inquiry, the Federal Circuit has looked to the claims as well as the specification. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("*Affinity Labs II*") ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface."). Still, it is not enough just to disclose the improvement in the specification; instead, the Court's task becomes to "analyze the asserted claims and determine whether they capture these improvements." *Berkheimer*, 881 F.3d at 1369 (emphasis added). In other words, "[t]o save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added); *see also Alice*, 134 S. Ct. at 2357 ("[W]e must examine the elements of the claim to determine whether it contains an 'inventive concept.'") (emphasis added); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

At both steps one and two, it is often useful for the Court to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

Finally, as a procedural matter, the Federal Circuit has observed frequently that

§ 101 disputes may be amenable to resolution on motions for judgment on the pleadings, motions to dismiss, or summary judgment. *See, e.g., Berkheimer*, 881 F.3d at 1368 ("Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts. Patent eligibility has in many cases been resolved on motions to dismiss or summary judgment. Nothing in this decision should be viewed as casting doubt on the propriety of those cases. When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law.") (emphasis added); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351-52 (Fed. Cir. 2014) (affirming grant of Rule 12(c) motion for judgment on pleadings for lack of patentable subject matter).

## III. DISCUSSION

Defendants contend that the claim 25 is ineligible under § 101 because it is directed to the abstract idea of monitoring and controlling the status of irrigation equipment, something that could be done "by field workers taking directions from a foreman." (D.I. 69 at 8; *see also* Tr. at 102-03) Defendants further contend that claim 25 contains no inventive concept and merely recites well-understood, routine, and conventional elements. (*See* D.I. 69 at 10; Tr. at 92) Plaintiff responds that the patent is directed to an improved and innovative user interface, which is not an abstract idea. (*See* D.I. 72 at 10; Tr. at 100-01) Claim 25 is patent-eligible also because, according to Plaintiff, it is "directed to a particular implementation of a solution to a computer problem." (D.I. 72 at 12 ("The asserted claims are directed to specific implementations of the claimed invention that are particular for use in remote devices and their monitoring and controlling of irrigation equipment."); Tr. at 106)

### A. This Motion May Be Decided without Further Discovery

As an initial matter, the Court has determined that no disputes of fact make resolution of the issues presented by the motion inappropriate. *See Berkheimer*, 881 F.3d at 1369. In its SAC, Plaintiff alleges:

> In particular, a difficulty that had previously inhibited the use of handheld devices to monitor and control irrigation equipment was their inherently small screens. Valmont's engineers developed novel graphical user interfaces, particular to the application relating to the monitoring and controlling of irrigation equipment, that could represent a lot of information in a relatively small area, yet still be quickly and easily read. Among these innovations were graphical user interfaces that are shaped to represent one or more data and whose shape may change in response to changes in the data.

(D.I. 66 at ¶ 12) Plaintiff relies on this allegation and an excerpt from *Aatrix*, 882 F.3d at 1128, to argue that because the SAC alleges "that individual elements and the claimed combination are not well-understood, routine, or conventional activity," the § 101 "question cannot be answered adversely to the patentee based on the sources properly considered on a motion to dismiss." (D.I. 72 at 18-19) (citing *Aatrix*, 882 F.3d at 1128) In particular, Plaintiff argues that discovery will address whether "the use of these GUIs on these devices . . . would . . . have been a well-known, routine, conventional use of these interfaces or would . . . be unconventional" (Tr. at 106)

But the claims do not capture Plaintiff's purported innovation: the use of compact and efficient GUIs on a small screen. *See, e.g.*, *TriPlay, Inc. v. WhatsApp Inc.*, 2018 WL 1479027, at *8 (D. Del. Mar. 27, 2018) ("Unlike, for instance, the claims involved in *Berkheimer*, the specification here is silent as to what the specific claimed improvement is, how it differs from the prior art, or how any inventive feature, alone or as an ordered combination, is used in an unconventional manner.") (citing *Berkheimer*, 881 F.3d at 1369). Plaintiff finds support for its

position in the section of the patent "talking about how Valmont's engineers found a way to present this information in a manner that was quickly and easily read." (Tr. at 107-08) (citing '357 patent at 2:27-31) The lone supporting passage on which Plaintiff relies immediately follows the patent's description of the prior art's problems with *portability*. ('357 patent at 1:24-45) The portability problem is consistently referenced throughout the patent. In the Court's view, "quick and easy" is in relation to and results from the *portability* of the "remote user interface," *not* the "plurality of graphic user interfaces" that the display may generate. ('357 patent at 2:27-31) This is the only plausible conclusion that can be reached based on the patent, so the SAC's allegations of innovative GUIs (D.I. 66 at ¶ 12) need not be accepted as true, even at the pleading stage. *See generally Iqbal*, 556 U.S. at 678.

The '357 patent is unlike the patents involved in *Aatrix*, which claimed an improvement in the importation and conversion of data from multiple third-party software applications – which was a technological improvement. Similarly, the alleged innovation is distinct from *Core Wireless*, where the Federal Circuit relied on an abundance of support in the specification and failures of the prior art to find an innovative concept. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) ("The specification confirms that these claims disclose an improved user interface for electronic devices, particularly those with small screens. It teaches that the prior art interfaces had many deficits relating to the efficient functioning of the computer."); *see also Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1005 (Fed. Cir. 2017) (assessing whether claims were directed to "specific . . . solution of a problem, or improvement in the functioning of technology").

In sum, Plaintiff has identified no factual disputes that require discovery and further proceedings that need to be resolved before assessing the patentable subject matter issue.

B.  **Claim Construction**

In their briefing the parties disputed the need for claim construction prior to the Court's consideration of the motion to dismiss. (*Compare* D.I. 72 at 19-20 (citing *Content Extraction*, 776 F.3d at 1349) *with* D.I. 77 at 8-9) However, both parties now agree that claim construction does not bear on the motion to dismiss, and may be decided separately. (*See* Tr. at 95-96) The Court agrees.[1]

C.  **Claim 25 Is Directed to Nonpatentable Subject Matter**

Claim 25 of the '357 patent is directed to "a remote user interface for reading a status of and controlling irrigation equipment." ('357 patent at claim 25)

1.  **Step One**

At step one the Court inquires whether the focus of the claims "is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36. The Court agrees with Defendants that claim 25 is directed to the abstract idea "of remotely monitoring and controlling irrigation equipment" (D.I. 77 at 9; *see also* Tr. at 87) and not, as Plaintiff contends, "to specific improvements to irrigation control systems comprising innovative GUIs for monitoring and controlling irrigation equipment via a hand-held device." (D.I. 72 at 3; *see also* Tr. at 99)

Generic rearrangements of graphical displays are not "a 'specific asserted improvement in computer capabilities.'" (*See* D.I. 72 at 10) (quoting *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018)) Plaintiff describes how the invention allows computers to

---

[1]In any event, by separate Opinion issued today, the Court has resolved the parties' claim construction disputes, which were argued at the same hearing as the motion. None of the Court's constructions impact the § 101 analysis.

11

perform the same functions as in the prior art, but on a smaller screen. This data-reformatting, even if captured in the claims, is an abstract idea.

Plaintiff relies on *Core Wireless* for its contention that the '357 patent's GUIs are not an abstract idea under *Alice/Mayo*. (*See* Tr. at 101-05) In *Core Wireless*, the Federal Circuit found patentable "improved display interfaces," but this was where the specification disclosed exactly how and why the patented display diverged from "conventional navigation approaches." 880 F.3d at 1359. Here the patent says nothing about the display's innovativeness. Further, while the '357 patent claims the use of GUIs and provides examples, the patent in *Core Wireless* went further by "specifying a ***particular manner*** by which the summary window ***must*** be accessed. The claim further ***required*** the application summary window ***list a limited set of data***." *Id.* at 1362 (emphasis added). By contrast, applying irrigation data to an "interactive interface limitation [remains] a generic computer element." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370-71 (Fed. Cir. 2015).

Because Defendants have met their burden at Step One, the Court will address Step Two.

### 2. Step Two

The Court agrees with Defendants that "the ordered combination of claim 25's elements also does not render the claim patent-eligible." (D.I. 69 at 13; Tr. at 92-93) Of significance, the specification describes the invention, but never articulates patentable solutions to prior art problems. *See, e.g.*, *Triplay*, 2018 WL 1479027, at *8 ("[T]he specification describes the claimed invention. But it never really seems to clearly articulate – at least with respect to the 'access block' and 'media block' components of the invention – what problems remained unsolved as to those prior art systems, and/or how the use of these components as a part of a messaging system provided an improvement over the prior art.") (internal quotation marks

omitted). In fact, the '357 patent describes two pieces of prior art, both of which relate exclusively to limits on ***portability***. (*See* '357 patent at 1:24-45) The patent functions conventionally, achieving portability over the prior art through the application of a standard computer telecommunication system, processor, and display. *See Triplay*, 2018 WL 1479027, at *8 (citing *Berkheimer*, 881 F.3d at 1368; *Aatrix*, 882 F.3d at 1128; *Automated Tracking Sols.*, 723 F. App'x at 995).

Plaintiff's SAC tries to read an innovation and purpose into the claims that simply is not plausibly in the patent. *See Aatrix*, 882 F.3d at 1128. Plaintiff argues that its SAC (as well as the specification) demonstrates that the patent is "directed to specific implementations of the claimed invention that are particular for use in remote devices and their monitoring and controlling of irrigation equipment." (D.I. 72 at 13; *see also* D.I. 72 at 16 (citing *Bascom*, 827 F.3d 1341)) This characterization finds no basis in the patent and cannot, therefore, render the claims patent eligible.

**D.     Claims 79 and 37 are Likewise Unpatentable Under *Alice***

Plaintiff points out that "Claim 79 requires receipt of a user's commands to control the irrigation equipment through the user's manipulation of the GUIs such that the user is able to customize the screens to depict particular pieces of irrigation equipment being controlled." (D.I. 72 at 16-17) Claim 79 does not become patent eligible by "allow[ing] the user to customize the information that goes on the display that makes it easier for them to see the most pertinent information for them." The patent does not add an inventive element but merely incorporates a conventional feature of interactive displays. (Tr. at 115)

Claim 37, which calls for "monitoring and warning a user of the operational status of the irrigation equipment." (D.I. 72 at 17) Plaintiff identifies nothing on which the Court may rely to find this unconventional or not routine.

In sum, the Court finds claims 25, 37, and 79 to be patent ineligible. Should either party seek a ruling on the eligibility of any other claims, it will need to propose a briefing schedule to provide the Court with the input it needs to render an additional decision.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss with respect to claims 25, 37, and 79. An order follows.